■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. RUDY HEATH, Appellant.— Judgment, Supreme Court, New York County rendered on April 26, 1971, affirmed. Concur — Markewich, J. P., Kupferman, Steuer and Tilzer, JJ.; Murphy, J., dissents in a memorandum as follows: At the time defendant's plea was accepted, the court below noted on the record defendant's request for certification as an addict to the care and custody of the Narcotics Addiction Control Commission; and after advising defendant of the court's discretionary powers regarding the sentences which may be imposed on addicted felons, a medical examination, pursuant to section 207 of the Mental Hygiene Law,

was directed "for possible certification". Nevertheless, and despite the court's clear indication that it would consider certification if addiction was found, defendant was thereafter sentenced to an indeterminate term of imprisonment without any further mention of the results of the examination. Indeed, there is nothing in the minutes of sentence to even disclose the results thereof or whether it was brought to the court's attention. Appellant's counsel states that he was permitted to examine defendant's probation report, which revealed that defendant had been certified to be an addict prior to the date sentence was imposed. Since we must assume that the court examined the probation report prior to pronouncing sentence (CPL 390.20), it undoubtedly was aware of the medical findings. We must now further assume (since, as aforesaid, no reference to the medical report was ever made) that the Court then either rejected the finding of addiction; or accepted it, but nevertheless decided, in the exercise of its permissible discretion, to impose an indeterminate sentence. (Mental Hygiene Law, § 208.) On the record before us, however, we do not know which assumption to make. While I recognize, on constraint of our decision in *People* v. *Gordian* (39 A D 2d 861) (substantially modifying our prior holding in *People* v. *Carter,* 39 A D 2d 537), that the medical examination called for by section 207 of the Mental Hygiene Law may now be dispensed with by a Judge who has decided to sentence a felon to a penal institution irrespective of his addiction, I do not think we should further emasculate article 9 of the Mental Hyigiene Law and strain to circumvent its salutary provisions by now also holding that a Judge who indicated that he would certify an addicted felon for narcotics care and custody, and who ordered a medical examination to establish such fact but thereafter failed to mention its findings, must be assumed to have decided, between plea taking and sentence, to disregard the medical report and his own expressed intent. In clear and explicit terms the legislature has found and determined that "The human suffering and social and economic loss caused by the disease of drug addiction are matters of grave concern to the people of [this] state." (Mental Hygiene Law, § 200.) To combat the effects of this disease it enacted a comprehensive program of compulsory treatment of addicts. (See, Mental Hygiene Law, art. 9.) Because experience has demonstrated that those addicted to drugs could be rehabilitated through extended periods of treatment in a controlled environment followed by a supervised aftercare program, the Legislature authorized the certification of addicted felons to the care and custody of the Narcotics Addiction Control Commission for as long as five years (unless sooner rehabilitated). In light of the explicit legislative purpose underlying the State's narcotics program, certification should be encouraged and directed, unless the sentencing Judge clearly expresses or indicates his election to exercise the discretion vested in him to do otherwise. I find no such clear expression or indication in the record before us. Accordingly, the judgment should be reversed and the case remanded for resentencing in accordance with the procedures set forth in sections 207 and 208 of the Mental Hygiene Law and section 60.15 of the Penal Law.